```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA         :

          - v. -                 :    NOTICE OF MOTION

MARTIN RIVLIN,                   :    07 Cr. 524 (SHS)

          Defendant.             :
- - - - - - - - - - - - - - - - - x
```

**PLEASE TAKE NOTICE**, that the undersigned hereby moves this Court, before the Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, 500 Pearl Street, New York, New York, for an order dismissing that portion of the Indictment barred by the statute of limitations, pursuant to 18 U.S.C. § 3282 and Rule 12 of the Federal Rules of Criminal Procedure, and granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 8, 2007

                              Respectfully submitted,


                              Federal Defenders of New York, Inc.


                        By:   _____
                              **DEIRDRE D. VON DORNUM, ESQ.**
                              Attorney for Defendant
                              **MARTIN RIVLIN**
                              52 Duane Street - 10th Floor
                              New York, New York  10007
                              Tel.: (212) 417-8767

TO:

**MICHAEL J. GARCIA, ESQ.**
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Attn: Chi T. Kwok, Esq.
    Assistant United States Attorney

**MR. MARTIN RIVLIN**
608 W. 114th Street
Apartment #2B
New York, New York 10025

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :     07 Cr. 524 (SHS)

      - v. -                      :

MARTIN RIVLIN,                    :

            Defendant.            :
- - - - - - - - - - - - - - - - - x
```

### DEFENDANT MARTIN RIVLIN'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO DISMISS THE INDICTMENT IN PART

The defendant, Martin Rivlin, hereby moves under 18 U.S.C. § 3282 and Rule 12 of the Federal Rules of Criminal Procedure to dismiss the portion of the Indictment that is untimely. A substantial portion of the charged conduct falls outside of the applicable five-year statute of limitations, and therefore, that portion of the indictment should be dismissed.[1]

### STATEMENT OF FACTS[2]

Mr. Rivlin is charged in a one-count Indictment dated June 12, 2007, with fraudulently cashing pension checks belonging to

---

[1] The governing statute of limitations provides that "no person shall be prosecuted for any offense . . . unless the indictment is found . . . within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

[2] The facts that follow are undisputed.

his father from 1995 to 2003, and falsely representing that his father was alive in order to continue receiving these checks. See Indictment, attached as Exhibit A. Mr. Rivlin entered a plea of not guilty on July 9, 2007.

Mr. Rivlin's father, Solomon Rivlin, was a unionized pharmacist. He developed Alzheimers in the late 1970s and retired. Because of his increasing memory difficulties, in 1984, Martin Rivlin was given power of attorney and conservatorship over his father's financial affairs. He and his father opened a joint checking account, into which his father's pension checks from the Union Mutual Fund were deposited, and which Mr. Rivlin used to help pay the rent and his father's increasing medical expenses.

In 1987, Solomon Rivlin died suddenly of complications from a hernia operation. After his death, the monthly pension checks of approximately $550 continued to be sent to the apartment he had shared with his son. In order to receive and cash the checks from 1995 on, as the Government alleges, Mr. Rivlin would have needed to execute affidavits twice each year stating that his father was alive and that he was receiving and endorsing the pension checks on his father's behalf. See Sample Affidavit, attached as Exhibit B. According to the Indictment, Mr. Rivlin allegedly received the first charged pension check in 1995, 12 years prior to the Indictment, and the last pension check in approximately June 2003, more than four years prior to the

- 2 -

Indictment.

## ARGUMENT

**<u>The violation of 18 U.S.C. § 664 charged in the Indictment is a non-continuing offense; therefore any conduct charged beyond the five-year statute of limitations is barred.</u>**

The pertinent statute of limitations allows criminal prosecution for only five years following the completion of a criminal act. 18 U.S.C. § 3282. The only exception to this time bar is if the offense is "continuing," <u>i.e.</u>, if it "involves a prolonged course of conduct; its commission is not complete until the conduct has run its course." <u>United States v. Rivera-Ventura</u>, 72 F.3d 277, 281 (2d Cir. 1995) (internal citations omitted).

The Supreme Court has held that the doctrine of continuing offenses is a narrow exception to the statute of limitations that should only be applied if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." <u>Toussie v. United States</u>, 297 U.S. 112, 115 (1970). The substantive criminal statute at issue here, 18 U.S.C. § 664, does not meet this standard. Section 664 contains no language indicating that it is a continuing offense, nor is there clear Congressional intent that it be so treated.[3]

---

[3] 18 U.S.C. § 664 states, "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his

In order to determine Congressional intent, courts are to consider whether the criminalized acts "clearly contemplate a prolonged course of conduct" or a single act that may have continuing effects. <u>Toussie</u>, 297 U.S. at 120. Nothing in the nature of stealing money from an employee pension benefit plan compels the conclusion that Congress meant it to be a continuing offense. It is not inherently a prolonged course of conduct, but, rather, one that can be committed through a single act or multiple repetitions of that act. The offense of converting pension funds is complete as soon as the funds are wrongly taken.

Indeed, the allegations at issue here demonstrate the non-continuous nature: Mr. Rivlin is alleged to have affirmatively filled out and filed mandatory bi-annual certifications that the beneficiary of the pension checks was still alive and was receiving the checks. <u>See</u> Sample Affidavit, Exhibit B. Had any one certification not been filed, the checks would have stopped. Each asserted cashing of a monthly pension check completed the elements of the alleged crime and constitutes a separate offense. Each time an affidavit was filed and a check was cashed the offense was complete. Such discrete conduct stands in contrast to schemes in which checks are automatically received with no

---

own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both."

action required by the defendant to cause them to be received. See United States v. Smith, 373 F.3d 561, 568 (4th Cir. 2004) (differentiating between schemes that "establish a mechanism for the automatic and continuous receipt of funds for an indefinite period" and those that require "a series of acts that occur over a period of time," categorizing the former as a continuous offense and the later as non-continuous). This is unlike theft schemes where, for example, a single filing of a fraudulent Social Security Disability form or a passive failure to notify the agency of a changed circumstance, sets into motion an indefinite receipt of Social Security Disability checks, which would be a "continuing offense." Id. Here, an affirmative act was required bi-annually in order for the checks to be sent, and thus, for the conversion to occur. This is a non-continuing offense.

While the Second Circuit has never considered whether Section 664 is a continuing offense, it has held that a nearly identical statute, 18 U.S.C. § 641, which criminalizes the theft of public monies, was not continuing, on similar facts. In United States v. Silkowski, the defendant fraudulently collected his wife and daughter's Social Security benefits after they no longer resided with him. 32 F.3d 682, 690 (2d Cir. 1994). The Circuit concluded that, under Section 641, the only prosecutable conduct was that going back five years from the date of the charging document. Indeed, the government conceded in Silkowski

that Section 641 was not a continuing offense. See also United States v. Yashar, 166 F.3d 873 (7th Cir. 1999)(finding that 18 U.S.C. § 666, making it a crime for any agent of a government agency to embezzle, steal, obtain by fraud, or otherwise without authority knowingly convert any property belonging to the governmental agency, is not a continuing offense). Since there is no clear indication that Congress intended Section 664 to define a continuing offense, the statute of limitations began to run at the time of each discrete taking of pension money.

The instant Indictment, which was filed on June 12, 2007, alleges conversion of pension checks from January 1995 to June 2003. Because Mr. Rivlin was required by the pension fund to file a bi-annual certification that his father was alive and receiving the funds from the checks, and, had such a certification not been filed, the checks would have ceased forthwith, the statute of limitations begins to run from each filing of a certification. Accordingly, only checks allegedly received and cashed due to certifications filed after June 12, 2002, are susceptible to prosecution. Alternatively, if the Court decides that the statute of limitations begins to run from each cashing of a check, instead of each filing of a certification, all checks allegedly cashed prior to June 12, 2002, are barred from prosecution and that portion of the indictment alleging conversion from January 1995 to June 12, 2002, should be dismissed.

**CONCLUSION**

**WHEREFORE,** it is respectfully requested that this Court enter an order dismissing the untimely portions of the Indictment, and granting such other relief as the Court deems just and proper.

Dated:   New York, New York
         October 8, 2007

_____
**DEIRDRE D. VON DORNUM, ESQ**