```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA
                                    :
        - v. -
                                    :    07 Cr. 524 (SHS)
MARTIN RIVLIN,
                                    :
            Defendant.
                                    :
- - - - - - - - - - - - - - - - - -x
```

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

```
                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the United States
                                      of America
```

```
CHI T. STEVE KWOK
Assistant United States Attorney

      - Of Counsel -
```

**TABLE OF CONTENTS**

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . .    2

ARGUMENT:

I.   The crime with which the defendant is charged
     is a continuing offense.   . . . . . . . . . . . . .    4

II.  The loss amount used to calculate the defendant's
     term of imprisonment in the event of a conviction
     is not limited by the offense period alleged in the
     Indictment. . . . . . . . . . . . . . . . . . . . .   10

Conclusion  . . . . . . . . . . . . . . . . . . . . . .   12

**TABLE OF AUTHORITIES**

Cases:

Toussie v. United States, 397 U.S. 112 (1970) . . . . . . 4, 5, 9

United States v. Blizzard, 27 F.3d 100 (4th Cir. 1994) . . . 6, 8

United States v. Borgese, 235 F. Supp. 286
    (S.D.N.Y. 1964). . . . . . . . . . . . . . . . . . . . . 12

United States v. Fleetwood, 489 F. Supp. 129 (D. Or. 1980) . . 6

United States v. Fox, 788 F.2d 905 (2d Cir. 1986) . . . . . . 12

United States v. Hayden, 260 F.3d 1062 (9th Cir. 2001) . . . . 5

United States v. Rivera-Ventura, 72 F.3d 277
    (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 4, 5, 8, 9

United States v. Silkowski, 32 F.3d 682
    (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . 6n, 8, 11

United States v. Smith, 373 F.3d 561
    (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . 5, 6, 9

United States v. Yashar, 166 F.3d 873
    (7th Cir. 1999) . . . . . . . . . . . . . . . . . . .4, 6n, 7, 8


Statutes, Rules & Other Authorities:

18 U.S.C. § 641 . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. §§ 3663, 3663A, 3664 . . . . . . . . . . . . . . . . 11

U.S.S.G. § 1B1.3 . . . . . . . . . . . . . . . . . . . . . . . 11

Kevin F. O'Malley et al., Federal Jury Practice and
    Instructions, §§ 16.01, 16.03 (2000 & Supp. 2006) . . . . 6

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA            :
                                    :
         - v. -                     :
                                    :   07 Cr. 524 (SHS)
MARTIN RIVLIN,                      :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - -x
```

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Government respectfully submits this memorandum of law in opposition to the defendant's motion to dismiss the portion of the Indictment alleging pre-2002 conduct on the ground that the five-year statute of limitations bars its prosecution.

The defendant's motion should be denied. The crime with which the defendant is charged — defrauding a pension plan governed by the Employment Retirement Income Security Act ("ERISA") by filing false affidavits and cashing pension checks to which he was not entitled, in violation of 18 U.S.C. § 664 — is a continuing offense. The statute of limitations does not begin to run until the conduct has run its course. Here, the statute of limitations did not begin to run until June 2003 when the defendant cashed his last pension check. Because the Indictment was returned on June 12, 2007 — a year before the expiration of the five-year limitations period — the Indictment is timely.

Because the offense period alleged in the Indictment is proper under the continuing offense doctrine, the defendant would be required to pay restitution for losses incurred from 1995 to 2003 in the event of a conviction. With respect to the defendant's term of incarceration, however, the offense period in the Indictment does not limit the loss amount for which the defendant is responsible. Even if the offense period were narrowed to 2002 through 2003, as the defendant suggests (Motion at 6), under the Sentencing Guidelines and 18 U.S.C. § 3553(a), this Court is free at sentencing to consider the defendant's pre-2002 conduct as "relevant conduct" to calculate the total loss amount used to determine the defendant's term of imprisonment.

## BACKGROUND

The defendant's father, Solomon Rivlin, was a union member covered by a pension plan called the Union Mutual Fund Pension Plan ("the plan"). Under the terms of the plan, Solomon Rivlin was eligible to receive — and did receive — a monthly pension check starting from his retirement until his death. Before Solomon Rivlin's death, the New York Supreme Court, due to Solomon Rivlin's illness, appointed the defendant as the conservator of Solomon Rivlin's property. This appointment gave the defendant powers of attorney and the authority to dispose of his father's property to ensure his father's maintenance and support. In his capacity as the conservator, the defendant cashed pension checks issued to his father to pay rent for the

2

apartment where the defendant and his father were living at the time and to pay for his father's increasing medical expenses.

In February 1987, however, Solomon Rivlin passed away. The defendant did not inform the pension plan of his father's death. Instead, he started cashing the pension checks for his own use. In January 1995, the plan began requiring pensioners or their lawful representatives to file an affidavit every six month "acknowledg[ing] receipt of all pension checks to date" and "stat[ing] under oath" that the pensioner remains "alive." (Motion Ex. B). Pursuant to this requirement, the defendant submitted a total of at least 17 signed affidavits from 1995 to 2003 stating "under oath" that his father, albeit deceased since 1987, was "alive." The defendant also continued cashing the pension checks until June 2003 before the pension fund discovered the fraud. From 1995 to 2003, the amount of checks cashed by the defendant totaled approximately $55,000.

On June 12, 2007, a Grand Jury sitting in this District returned a one-count Indictment charging the defendant with violating 18 U.S.C. § 664 by submitting false affidavits to the pension plan and cashing pension checks to which he was not entitled. Although the defendant began cashing the pension checks for his own use as early as 1987 when his father passed away, the Indictment charges only conduct from January 1995, when the defendant submitted the first fraudulent affidavit.

3

**ARGUMENT**

**I.   The crime with which the defendant is charged is a continuing offense.**

Where a crime is a "continuing offense," the "limitations period . . . does not begin until the offense is complete," i.e., "until the conduct has run its course." United States v. Rivera-Ventura, 72 F.3d 277, 281 (2d Cir. 1995).  This is so even if the defendant's "conduct, even before it is concluded, may fit the statutory definition of a crime, thereby permitting institution of a prosecution before the offense is complete."  Id.  Hence, for "practical purposes," the continuing offense doctrine "extends the statute [of limitations] beyond its stated term" until "the offense expires."  Id.; United States v. Yashar, 166 F.3d 873, 876 (7th Cir. 1999).

A crime is a "continuing offense," and thus the statute of limitations is tolled, if "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."  Toussie v. United States, 397 U.S. 112, 115 (1970).

Although the statutory language in 18 U.S.C. § 664 does not explicitly state that embezzlement from a pension plan is a continuing offense, the "nature of the crime . . . is such that Congress must assuredly have intended that it be treated as [such]."  Id.  Like the "nearly identical statute, 18 U.S.C.

4

§ 641," (Motion at 5), section 664 covers the act of "embezzlement" and lists the prohibited acts disjunctively. Hence, so long as embezzlement is a continuing offense, the statute of limitations is tolled until the defendant's alleged conduct has "run its course." Rivera-Ventura, 72 F.3d at 281; United States v. Smith, 373 F.3d 561, 564 (4th Cir. 2004).

The Government is unaware of any authority in this Circuit that squarely addresses the question of whether embezzlement is a continuing crime, but cases in other circuits have. In United States v. Smith, 373 F.3d 561 (4th Cir. 2004), the Fourth Circuit held that "embezzlement is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring, amounts." Id. at 567 ("[Embezzlement] consists of converting different sums of money on many dates to the use of the thief."). Because embezzlement, by its very nature, involves a "patterned" and prolonged course of conduct, the Fourth Circuit held that it "is more properly characterized as a continuing offense rather than a series of separate acts." Id. at 564, 568; see also Toussie, 397 U.S. at 134 (White, J., dissenting) ("The 'continuing offense' is hardly a stranger to American jurisprudence. The concept has been extended to embrace such crimes as embezzlement . . . ."); United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001) (using "embezzlement" as an example of a "continuing offense").

5

This result is all but compelled by the line of cases holding that "'concealing and retaining' stolen government property in violation of 18 U.S.C. § 641 is . . . a continuing [offense]." United States v. Blizzard, 27 F.3d 100, 103 (4th Cir. 1994); United States v. Fleetwood, 489 F. Supp. 129, 132 (D. Or. 1980) ("[C]oncealing and retaining stolen property . . . is such that Congress must have intended it be treated as a continuing offense."). Because "embezzlement" is simply the "deliberate taking or retaining of the property of another . . . by a person into whose hands it has lawfully come," Kevin F. O'Malley et al., Federal Jury Practice and Instructions, §§ 16.01, 16.03 (2000 & Supp. 2006) (emphasis added); Smith, 373 F.3d at 564, embezzlement, too, is a continuing offense.[1]

---

[1] Contrary to the defendant's suggestion (Motion at 5-6), the Second Circuit in United States v. Silkowski, 32 F.3d 682 (2d Cir. 1994), did not resolve the issue. In that case, "the government concede[d] in its brief . . . that the information did not charge and [the defendant] did not enter a plea to a continuing offense pursuant to which [the defendant] could have been" — but was not — "prosecuted for conduct that predates the statute of limitations." Id. at 689 (internal quotation marks omitted).
  Nor does United States v. Yashar, 166 F.3d 873 (7th Cir. 1999), support the defendant's argument. (Motion at 6). Just the opposite is true. See id. at 875 (favorably citing Justice White's dissent in Toussie listing "embezzlement" as an example of a continuing offense); id. ("[T]he hallmark of the continuing offense is that it perdures beyond the initial illegal act."); pp. 7-8, infra. Yashar simply rejected the Government's alternative "straddling" theory after the Government "agree[d]" with the defendant in that case that the statute at issue there, 18 U.S.C. § 666, does not contemplate "a continuing offense as that term is defined in Toussie." Yashar, 166 F.3d at 876.

In attempting to distinguish these authorities, the defendant seizes on the half-yearly affidavits the defendant filed to argue that these forms somehow converted his continuing embezzlement scheme into a series of discrete acts. (Motion at 4-5). The defendant acknowledges that, had the defendant not been required to take any action — <u>i.e.</u>, if his initial failure to report his father's death "set[] into motion an indefinite receipt" of pension benefits without the need for further action — the offense would indeed be a continuing offense. (Motion at 5). The defendant argues, however, that the mandatory bi-annual recertifications rendered the embezzlement non-automatic and non-continuous. (Motion at 4-5).

This argument is meritless. First, under <u>Toussie</u>, whether a crime qualifies as a continuing offense depends on the general "nature of the crime," not the specific conduct in a particular case. 397 U.S. at 115. As the Seventh Circuit held in <u>United States</u> v. <u>Yashar</u>, 166 F.3d 873 (7th Cir. 1999) — a case the defendant himself relies on (Motion at 6) — the inquiry "focuses on whether the crime <u>by its nature</u> is such that Congress must have intended that it be treated as a continuing one." <u>Id.</u> at 877 (emphasis added). It does not hinge on the "charged conduct" or the "indictment in a particular case." <u>Id.</u> <u>Yashar</u> could not have been clearer on this point when it held that "the active or passive nature of a defendant's actions has never been

7

the benchmark of a continuing offense under <u>Toussie</u>. . . . If the statute describes an offense that by its nature continues after the elements have been met, then the offense is a continuing one regardless of the nature of defendant's actions." <u>Id.</u>; <u>United States</u> v. <u>Silkowski</u>, 32 F.3d 682, 690 (2d Cir. 1994) (noting that "the issue [whether or not] a violation of section 641 [is] a noncontinuing offense" has been decided by other courts "regardless of the language contained in the underlying charging document"); <u>Rivera-Ventura</u>, 72 F.3d at 281 ("A 'continuing offense' is, <u>in general</u>, one that involves a prolonged course of conduct.") (emphasis added).

More fundamentally, the defendant's position turns the interests served by statutes of limitations on their head. To the extent that actions taken by a defendant in a particular case are relevant at all, recurring acts that continued up to the recent past argue in favor of, not against, applying the continuing offense doctrine. Statutes of limitations, as "statutes of repose," are designed to ensure that there is a reasonable "temporal relationship between the offense and culpability." <u>Rivera-Ventura</u>, 72 F.3d at 281; <u>Blizzard</u>, 27 F.3d at 103. By bringing the criminal scheme up-to-date, a defendant's affirmative acts refresh, with each re-occurrence,

the "temporal relationship between the offense and culpability."[2]

For this reason, cases where courts have declined to apply the continuing offense doctrine involve time-barred one-time-only acts or omissions, not recurring acts that continued up to the recent past. See Toussie, 397 U.S. at 112 (failure to register for the military draft 8 years before indictment); Rivera-Ventura, 72 F.3d at 277 (illegal reentry into the United States 7 years before indictment). Here, in contrast, each of the defendant's 17 signed affidavits from 1995 to 2003 serves as a critical link in one unbroken temporal chain that shows just how "prolonged," "patterned," and "continuous" defendant's "course of conduct" was that distinguishes this embezzlement offense from non-continuing crimes. Rivera-Ventura, 72 F.3d at 281; Smith, 373 F.3d at 564.

Finally, even if a defendant's affirmative acts may, in certain circumstances, render an otherwise continuing offense non-continuing, the affidavits in this case fail to do so. The defendant is charged with engaging in a single continuous scheme to defraud the pension fund, not with making separate false

---

[2] The defendant's reliance on United States v. Smith, 373 F.3d 561 (4th Cir. 2004) (Motion at 5), is unavailing. Smith did not hold that only "automatic scheme[s] of embezzlement" — i.e., schemes "without need for affirmative acts linked to particular receipt of funds" — fall under the continuing offense doctrine. 373 F.3d at 567-68. The court was simply recounting the scheme at issue in that case and applying its legal holding to the facts presented. Id.

9

statements. Cf. 18 U.S.C. § 1001. While the affidavits were part of the means and method used to perpetrate the fraud, and are now evidence of the fraud, they are not the sine qua non of the crime itself. The defendant's affidavits cannot convert the embezzlement scheme with which the defendant is charged into a series of discrete acts and thereby effectively amend the Indictment to allege a different statutory violation altogether.

What is more, the one-page bi-annual re-certification forms in this case require the affiant to do nothing more than supply the same basic information year after year — the defendant's signature, the pensioner's name, and social security number — and have the affidavit sworn out before a notary public. (Motion Ex. B). Unlike the filing of, for example, a tax return, the filing of these affidavits amounts to nothing more a mechanical act. The defendant's attempt to distinguish this case on the basis of these simple forms from cases involving social security benefits where the receipt of benefits is purportedly "automatic" elevates form over substance. (Motion at 4-5).

II. **The loss amount used to calculate the defendant's term of imprisonment in the event of a conviction is not limited by the offense period alleged in the Indictment.**

For the reasons set forth above, the defendant is properly charged with a continuing offense from 1995 to 2003. Accordingly, should he be convicted of the offense, he would be required to pay restitution for losses incurred during this

eight-year period.  See 18 U.S.C. §§ 3663, 3663A, 3664; Silkowski, 32 F.3d at 689.

In contrast to restitution, the loss amount used to calculate the defendant's sentence is not limited or determined by the offense period alleged in the Indictment.  Silkowski, 32 F.3d at 687-88.  Even if the offense period in Indictment were narrowed to 2002 through 2003 (see Motion at 6), this Court is free to consider "conduct that predates that charged in the indictment."  Id. at 688.  Under the Sentencing Guidelines, see U.S.S.G. § 1B1.3; Silkowski, 32 F.3d at 687-88, there is no "inherent temporal limitation on the transactions to be considered," so long as the "[loss] amounts considered [relate to] part of the same course of conduct as the count[] leading to conviction."  Id. (internal quotation marks omitted).  Likewise, under 18 U.S.C. § 3553(a), the Court "shall consider the nature and circumstances of the offense and the history and characteristics of the defendant," and is also not limited by the offense period alleged in the Indictment.

Because the outcome of the instant motion will have no impact on the loss amount that will be used to calculate the defendant's sentence, the defendant has not shown how his interests would be advanced by asking this Court to resort to the "drastic remedy," "not [to] be lightly considered," of dismissing

11

even a portion of the Indictment. <u>United States</u> v. <u>Fox</u>, 788 F.2d 905, 909 (2d Cir. 1986).[3]

### CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss should be denied.

Dated:  New York, New York
        October 31, 2007

> Respectfully submitted,
>
> MICHAEL J. GARCIA
> United States Attorney
>
> By: _____
> Chi T. Steve Kwok
> Assistant United States Attorney
> Telephone: (212) 637-2415

---

[3] Moreover, to the extent the defendant bases his claim of prejudice on the sentence he may receive in the event of a conviction, the argument is not only meritless, but also "premature." <u>See</u> <u>United States</u> v. <u>Borgese</u>, 235 F. Supp. 286, 298 (S.D.N.Y. 1964).

12

CERTIFICATE OF SERVICE

Chi T. Steve Kwok deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York;

That on October 29, 2007, he caused to be served by hand a copy of the Government's Memorandum of Law in Opposition to Defendant's Motion to Dismiss on:

> Deirdre Von Dornum, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street
> 10th Floor
> New York, NY 10007

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

_____
Chi T. Steve Kwok

Executed on:    October 29, 2007
                New York, New York

13